IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HAMPTON BERMUDA LTD., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3074 |
| | § | |
| M/V STAR SIRANGER, <u>in rem</u>, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is the Motion for Summary Judgment (Docket Entry No. 19) filed by Star Shipping AS ("Star Shipping"), claimant of the *in rem* Defendant M/V *STAR SIRANGER*. Star Shipping seeks summary judgment on the admiralty and maritime lien claim of Plaintiff Hampton Bermuda Ltd. ("Hampton") arising out of the alleged supply of bunkers to the *STAR SIRANGER* in Savannah, Georgia in June 2005. Having reviewed Star Shipping's motion, the submissions of the parties, the pleadings, and the applicable law, the Court finds that Star Shipping's Motion for Summary Judgment should be denied.

**I.**     *Background*

On February 8, 2005, Seabridge Projects, Inc. ("Seabridge") time-chartered the *STAR SIRANGER* for a period of between 110 to 140 days pursuant to a New York Produce Exchange standard form time charter party. *See* Docket Entry No. 19, Attach. to Exh. A. The charter party contained an industry-standard "prohibition of liens" clause, which provided:

> Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agent, which might have priority over the title and interest of the owners of the vessel.

*See id.*, Clause 18, ll. 112-113.

Seabridge arranged to have the *STAR SIRANGER* call on the Port of Savannah in June 2005. In anticipation of the vessel's arrival, Andreas Haukaas ("Haukaas") (who is located at Star Shipping's head office in Norway) sent an e-mail to Don Walden ("Walden") (who is an Assistant Agency Manager for Star Shipping in Savannah, Georgia) instructing him to advise "Seabridge's agents and other suppliers of the services to the vessel" of the prohibition of liens clause in the charter party. *See* Docket Entry No. 19, Exhs. B and B-1. On June 23, 2005, Walden forwarded Haukaas' e-mail to Seabridge's local agent, Wilmington Shipping, and requested that the "no lien" clause be made known to all vendors associated with the vessel's upcoming call in to the port of Savannah. *See id.*, at Exh. B-1.

Additionally, Walden communicated the information regarding the "no lien" clause directly to certain suspected suppliers of the vessel. *See* Docket Entry No. 19, Exh. B, at ¶ 6. On June 27, 2005, at 8:07 a.m., Walden sent an e-mail message to Colonial Oil Industries, Inc. ("Colonial"), a company that delivers bunker fuel to vessels, advising of the prohibition of liens clause.[1] *See id.*, at Exh. B-2. Walden attached to his e-mail an advisory from Haukaas that expressly set forth the prohibition of liens clause, and Walden further communicated the following to Gary Gale ("Gale") of Colonial:

> Ref the bunker stem being supplied today @ ECT for the Star Siranger, pls note below for your records in case attending agent, Wilmington Shipping, has not advised you previously. Pls acknowledge receipt.

*See id.* On that same morning, at 9:36 a.m., Gale replied to Walden's e-mail. *Id.*

---

[1] Hampton sold bunkers of fuel oil to the *STAR SIRANGER* at the Port of Savannah, Georgia, on June 27, 2005. Hampton alleges that an independent contractor, Colonial Oil, a local Savannah, Georgia fuel depot actually delivered the bunkers to the vessel. *See* Docket Entry No. 20, at ¶¶ 1-2.

In his reply e-mail back to Walden, Gale stated that the bunkers were to be supplied to the *STAR SIRANGER* at " 1300 27 June at EST." *See* Docket Entry No. 19, Exh. B-2. A " bunker receipt" from Colonial indicates that pumping commenced at 13:35 hrs. and concluded at 15:45 hrs. on June 28, 2005. *See id.*, at Exh. C. The receipt references " Account: Hampton." *See id.*

Seabridge failed to pay for the fuel delivery. Thus, on September 1, 2005, Hampton initiated this case and arrested the *STAR SIRANGER* in Houston, Texas. *See* Docket Entry Nos. 1, 2, 4, 5. The vessel was released after Star Shipping, as owner, provided Hampton with a satisfactory Letter of Undertaking. In its First Amended Complaint, Hampton claims a maritime lien on *STAR SIRANGER* in the amount of $111,251.47 for necessaries (bunkers) provided to the vessel. *See* Docket Entry No. 27, at ¶ IV.

**II.** *Analysis*

    **A.** *Summary Judgment Standard*

The court may grant summary judgment under FED. R. CIV. P. 56(c) when the moving party is entitled to judgment as a matter of law because there is no genuine issue as to any material fact. The burden of proof, however, rests with the movant to show that there is no evidence to support the nonmoving party's case. If a reasonable jury could return a verdict for the nonmoving party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "material" only if its resolution could affect the outcome of the case. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991). When deciding whether to grant a motion for summary judgment, the court shall draw all justifiable inferences in favor of the nonmoving party, and deny the motion if there is some evidence to support the nonmoving party's

position. *See McAllister v. Resolution Trust Corp.*, 201 F.3d 570, 574 (5th Cir. 2000). If there are no issues of material fact, the court shall review any questions of law *de novo*. *See Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Once the movant properly supports the motion, the burden shifts to the nonmoving party, who must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000).

  **B.** *<u>Notice of Prohibition of Liens Clause</u>*

Star Shipping argues Hampton cannot claim a maritime lien on the *STAR SIRANGER* because Hampton, acting through its alleged agent Colonial, received notice of the prohibition of liens clause in the charter party before it allegedly supplied bunkers to the vessel. *See* Docket Entry No. 19. In response, Hampton maintains that there is no evidence that it had actual knowledge of the charter party, much less a specific provision in the charter party. *See* Docket Entry No. 20, at ¶ ¶ 6-8. Hampton argues, albeit implicitly, that Colonial is an independent contractor and that notice to Colonial does not equate to notice to Hampton. *See id.*

Under the Maritime Commercial Instruments and Liens Act ("MCILA"), 46 U.S.C. § 31301, *et seq.*, " a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner has a maritime lien on the vessel . . . unless the provider of the necessaries has waived it right to the lien." *See Lake Charles Stevedores, Inc. v. PROFESSOR VLADIMIR POPOV M/V*, 199 F.3d 220, 224 (5th Cir. 1999) (internal citations omitted), *cert. denied*, 529 U.S. 1130 (2000); *see also* 46 U.S.C. §§ 31305, 31342(a). A charterer is presumed to have authority

to procure necessaries (*e.g.*, fuel bunkers) on the vessel's account. *See Ferromet Resources, Inc. v. Chemoil Corp.*, 5 F.3d 902, 904 (5th Cir. 1993); *see* 46 U.S.C. § 31341(a). "The presumption created in § 31341 is not conclusive, . . . and thus can be rebutted by, for example, a showing that the provider of necessaries had actual knowledge of a no-lien clause that prevented the entity from ordering those necessaries from binding the vessel." *PROFESSOR VLADIMIR POPOV M/V*, 199 F.3d at 225.

It is undisputed that bunkers are necessaries and that Hampton provided this service to the *STAR SIRANGER*. The issue is whether, prior to Colonial delivering the bunkers, Hampton had notice that the *STAR SIRANGER* was under a time charter that contained a prohibition of liens clause. The essence of Star Shipping's argument is that Colonial was Hampton's agent; thus, Star Shipping contends that Hampton is chargeable with the notice of the prohibition of liens clause given to Colonial. The Court rejects this contention.

The Court finds persuasive the Fifth Circuit's analysis of the significance of notice in *Gulf Oil Trading Co. v. M/V CARIBE MAR*, 757 F.2d 743 (5th Cir. 1985). In *M/V CARIBE MAR*, Gulf engaged an independent contractor to deliver fuel bunkers to the vessel. *See id.* at 745-46. At some time before the fuel was delivered, the vessel's master delivered papers to the independent contractor, giving notice that the *CARIBE MAR* was chartered, and that the charter party contained a prohibition of liens provision. *See id.* at 746. Following delivery of the bunkers, the vessel's owners sent a letter directly to Gulf, informing Gulf of the no-lien term of the charter. *See id*. Gulf later provided a second supply of fuel for the *CARIBE MAR*. *See id*. The charterer failed to pay for either fuel delivery, and Gulf brought an action against the vessel, alleging maritime liens with respect to both deliveries. *See id.* The Fifth Circuit found that Gulf had a valid maritime lien

for the first delivery, but not for the second. *See id.* at 750-51. It recognized that "[s]uppliers of necessaries are afforded the protection of a lien even when, because of temporal or other limitations, they are unable to ascertain the existence of a prohibition of lien clause or check the credit of the buyer." *Id*. at 749. The Fifth Circuit went on to observe that such protection was inappropriate where the supplier had actual knowledge of a no-lien clause, since the supplier was then "in a position to make an informed business decision, and may refuse to supply the vessel, make other arrangements for payment, or assume the risk." *Id*. Since Gulf received the letter informing it of the no-lien provision before the second delivery of fuel to the *CARIBE MAR*, Gulf was not entitled to assert a lien with respect to that delivery. *See id.* at 750-51.

Here, Star Shipping has failed to meet its burden of establishing actual notice of the prohibition of liens clause to Hampton. Although it is undisputed that Colonial received notice of the prohibition of liens clause by e-mail prior to the delivery of the bunkers, Star Shipping has produced nothing to indicate that Colonial served as anything more that an independent contractor delivering the fuel. *See M/V CARIBE MAR*, 757 F.2d at 750-51. Additionally, there is no evidence in the record that either Star Shipping or Colonial's employees brought the prohibition of liens clause to Hampton's attention. *See id*. Because there is a lack of evidence demonstrating that Colonial was Hampton's agent and that Hampton received actual notice of the prohibition of liens clause prior to the delivery of the bunkers, disputed issues of material fact exist that preclude Star Shipping's motion for summary judgment on Hampton's maritime lien.

### III. *Conclusion*

Based on a review of the evidence produced by both parties, genuine issues of material fact remain which preclude a summary judgment. It is therefore

**ORDERED** that Defendant Star Shipping's Motion for Summary Judgment (Docket Entry No. 19) is **DENIED**.

**SIGNED** at Houston, Texas on this the 28th day of February, 2007.

Calvin Botley
United States Magistrate Judge