IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HAMPTON BERMUDA LTD., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3074 |
| | § | |
| M/V STAR SIRANGER, <u>in rem</u>, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant Colonial Oil Industries, Inc.'s ("Colonial") Motion for Summary Judgment against Plaintiff Hampton Bermuda Ltd. ("Hampton Bermuda"). Colonial seeks summary judgment on Hampton Bermuda's admiralty and maritime lien claim arising out of the supply of bunkers to the *M/V STAR SIRANGER* in Savannah, Georgia in June 2005. Having reviewed Defendant's motion, the submissions of the parties, the pleadings, and the applicable law, the Court finds that Defendant's Motion for Summary Judgment (Docket Entry No. 56) should be granted.

**I.**     *Background*

On February 8, 2005, Sea Bridge Projects, Inc. ("Sea Bridge") time-chartered the *STAR SIRANGER* for a period of between 110 to 140 days pursuant to a New York Produce Exchange standard form time charter party. *See* Docket Entry No. 48, Exh. A. The charter party contained an industry-standard "prohibition of liens" clause, which provided:

> Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agent, which might have priority over the title and interest of the owners of the vessel.

*See id.*, Clause 18, ll. 112-113.

Sea Bridge arranged to have the *STAR SIRANGER* call on the Port of Savannah in June 2005. In anticipation of the vessel's arrival, Andreas Haukaas ("Haukaas") (who is located at Star Shipping's head office in Norway) sent an e-mail to Don Walden ("Walden") (who is an Assistant Agency Manager for Star Shipping in Savannah, Georgia) instructing him to advise "Seabridge's agents and other suppliers of the services to the vessel" of the prohibition of liens clause in the charter party. *See* Docket Entry No. 32, Exhs. D and D-2. On June 23, 2005, Walden forwarded Haukaas' e-mail to Sea Bridge's local agent, Wilmington Shipping, and requested that the "no lien" clause be made known to all vendors associated with the vessel's upcoming call in the port of Savannah. *See id.*, at Exh. D-1.

On June 24, 2005, Sea Bridge contacted Hampton Bunkering Ltd. ("Hampton Bunkering"), a fuel broker that sources fuel for its customers. On the same date, Hampton Bunkering requested a price quote from Colonial for a specified amount of bunker fuel oil. *See* Docket Entry No. 53, Exh. B. Colonial is a "physical supplier" of bunker fuel—*i.e.*, it is the entity that actually owns the bunkers and delivers them to the vessel. *See id.*, at Exh. A, pp. 49-50. Colonial responded to Hampton Bunkering's quote request by e-mail with a specified price for the amount of bunker fuel requested. *See id.*, at Exh. B. Prior to accepting the quote from Colonial, Hampton Bunkering sought approval from Sea Bridge. *See id.*, at Exh. A, at p. 25.

After a telephone conversation with the appropriate Sea Bridge representative, on June 24, 2005, Hampton Bunkering sent an e-mail to Sea Bridge regarding "bunker nomination confirmation." *See id.*, at Exh. C.

> As per instructions received from buyer, and on their behalf, we have placed following nomination for bunkers in accordance with physical suppliers' normal terms and

conditions which have been herewith fully accepted without reservation by buyers. Additional copies are available upon request.

*See id*. The e-mail goes on to reference the following:

| | |
|---|---|
| Vessel: | MV Star Siranger- IMO #9000314 |
| Buyer: | Owners/Operators/Master and/or Sea Bridge Projects Inc. |
| Seller: | Hampton Bermuda Ltd. |
| Supplier: | Colonial Oil |
| Port: | Savannah |
| Date: | June 26/27 |

*See id*.  At the bottom of the e-mail was an admonishment:

No disclaimer stamp of any type or form will be accepted on the bunker receipt, nor, should any stamp be applied, will it alter, change or waive the seller's maritime lien against the vessel, or waive the vessel's ultimate responsibility for the debt incurred through this transaction.

Supply to be closely coordinated with local agents. Demurrage, downgrading, pumpback, detention, overtime, taxes and any other applicable charges for buyer's account. The details of this nomination are being sent to buyer and supplier, any errors or omissions should be reported by either party immediately.

*See id*. This confirmation e-mail contained language in which Hampton Bunkering acknowledged and accepted Colonial's Terms and Conditions of sale:

As pers instructions from buyer, and on their behalf, we have placed following nomination for bunkers in accordance with physical suppliers' normal terms and conditions which have been herewith fully accepted without reservation by buyers. Additional copies are available upon request.

*See id*.; *see also id*., at Exh. F.

Prior to the *STAR SIRANGER*'S arrival in Savannah, Walden communicated the information regarding the "no lien" clause directly to certain suspected suppliers of the vessel. *See* Docket Entry No. 32, Exh. D, at ¶ 6. On June 27, 2005, at 8:07 a.m., Walden sent an e-mail message to Colonial, advising of the prohibition of liens clause. *See id*., at Exh. D-2. Walden attached to his e-mail an

3

advisory from Haukaas that expressly set forth the prohibition of liens clause, and Walden further communicated the following to Gary Gale ("Gale") of Colonial:

> Ref the bunker stem being supplied today @ ECT for the Star Siranger, pls note below for your records in case attending agent, Wilmington Shipping, has not advised you previously. Pls acknowledge receipt.

*See id*. On that same morning, at 9:36 a.m., Gale replied to Walden's e-mail. *Id*. In his reply e-mail back to Walden, Gale stated that the bunkers were to be supplied to the *STAR SIRANGER* at "1300 27 June at EST." *See id*.

On June 27, 2005, Colonial delivered the bunkers to the *STAR SIRANGER* while the vessel was in the Port of Savannah, Georgia. *See* Docket Entry No. 53, Exh. D. The Colonial bunker receipt references "Account: Hampton." *See id*. Colonial subsequently billed "Hampton" for the bunkers by invoice and received payment for the same. *See id*., at Exh. A, pp. 41-42. On July 4, 2005, Hampton Bunkering sent an invoice to Sea Bridge in the amount of $111,251.47 for the bunkers that it had previously purchased from Colonial; however, Sea Bridge has failed to pay Hampton. *See id*., at Exh. E.

Thus, on September 1, 2005, Hampton Bermuda initiated this case and arrested the *STAR SIRANGER* in Houston, Texas. *See* Docket Entry Nos. 1, 2, 4, 5. The vessel was released after Star Shipping, as owner, provided Hampton Bermuda with a satisfactory Letter of Undertaking. In its Second Amended Complaint, Hampton Bermuda claims a maritime lien on *STAR SIRANGER* in the amount of $111,251.47 for necessaries (bunkers) provided to the vessel. *See* Docket Entry No. 35, at ¶ IV.

4

## II.     *Analysis*

### A.     *Summary Judgment Standard*

The court may grant summary judgment under FED. R. CIV. P. 56(c) when the moving party is entitled to judgment as a matter of law because there is no genuine issue as to any material fact. The burden of proof, however, rests with the movant to show that there is no evidence to support the nonmoving party's case. If a reasonable jury could return a verdict for the nonmoving party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "material" only if its resolution could affect the outcome of the case. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991). When deciding whether to grant a motion for summary judgment, the court shall draw all justifiable inferences in favor of the nonmoving party, and deny the motion if there is some evidence to support the nonmoving party's position. *See McAllister v. Resolution Trust Corp.*, 201 F.3d 570, 574 (5th Cir. 2000). If there are no issues of material fact, the court shall review any questions of law *de novo*. *See Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Once the movant properly supports the motion, the burden shifts to the nonmoving party, who must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000).

**B.**     *Plaintiff's Failure to Respond*

The Local Rules of the United States District Court for the Southern District of Texas regulate civil pretrial motion practice in this Court. Specifically, Local Rule 7.4 provides that a failure to respond to a motion will e taken as a representation of no opposition. In this case, Colonial filed its motion for summary judgment on October 8, 2007. To date, approximately three months later, Plaintiff has not responded to Colonial's motion.

Nevertheless, this Court cannot grant summary judgment simply because there has been no opposition to the motion. *See Hibernia Nat'l Bank v. Admin. Cental Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir. 1985) (citation omitted). This Court may, however, accept as undisputed the movant's version of the facts and grant summary judgment where the movant has met its initial burden of making a *prima facie* showing of its entitlement to summary judgment. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587; *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g,* 70 F.3d 26 (5th Cir. 1995).

**C.**     *Colonial Owed No Duty to Plaintiff*

**1.**     *No Duty Under the Terms and Conditions*

The June 24, 2005, e-mail correspondence between Colonial and Plaintiff memorialized the agreement between the parties and the Terms and Conditions set forth by Colonial are controlling. *See* Docket Entry No. 53, Exhs. C and F. Indeed, the Terms and Conditions do not mention any duty owed by Colonial regarding communication of a no lien provision. *See id.*, at Exh. F. Moreover, the President of Hampton Bermuda, Christopher Hampton-Davies ("Hampton-Davies"), testified during deposition that there is no protocol regarding no lien provisions and communication of their existence to the fuel broker. *See id.*, at Exh. G, p. 15. Hampton-Davies stated that there was no

written or oral agreement to pass on the no lien provision information to either party. *See id*. He acknowledged that passing along the information regarding the no lien provision is merely "[g]ood business practice." *See id*. Based on the documents produced by Colonial and the deposition testimony of Hampton-Davies that there was no written or oral agreement between the parties regarding the communication of no lien provisions. Consequently, Colonial had no contractual duty to pass information it received from Sea Bridge regarding the no lien provision along to Plaintiff.

### 2.   *No Agency Relationship between Colonial and Plaintiff*

According to the Terms and Conditions as well as the deposition testimony of the parties, there was no relationship other than buyer and seller between Colonial and Plaintiff. *See* Docket Entry No. 53, Exhs. F and H. Additionally, there was no e-mail communication between the parties expressing an agency relationship. A Colonial representative, Keith Hill ("Hill"), testified in his deposition that the relationship between Plaintiff and Colonial was nothing more than an "arms length relationship and confirmed that transactions between Colonial and Hampton are strictly on a buy/sell basis. *See id*., at Exh. H, p. 19. Because the only relationship between Colonial and Plaintiff was that of buyer and seller and the only duties of the parties were those set forth in the Terms and Conditions, Colonial had no contractual duty to communicate the no lien provision to Plaintiff.

### a.   *No Duty of Colonial as an Independent Contractor*

At most, Colonial was an independent contractor with relation to Plaintiff. In fact, in its Second Amended Complaint, Plaintiff refers to Colonial as an independent contractor. *See* Docket Entry No. 36, at ¶¶ 1-2. Citing to *Gulf Oil Co. v. M/V Caribe Mar*, Colonial argues that if the fuel supplier in *Gulf* was not imputed to know about the no lien provision due to the nature of the

relationship with the barge master, an independent contractor, there could not have been a duty of the barge master to inform the fuel supplier about the no lien provision. *See* 757 F.2d 743, 750 (5th Cir. 1985). Colonial opines that had such a duty existed on behalf of the barge master, the Court would likely have found that the fuel supplier was imputed to know about the know lien provision. *See* Docket Entry No. 53, p. 7. Here, on a negligence standard, Colonial, could not have breached a duty that did not exist. As an independent contractor, Colonial had no duty under tort law to inform Plaintiff about the no lien provision.

### III.   *Conclusion*

Summary judgment is proper because Plaintiff has not demonstrated the existence of any material questions of fact with respect to the essential elements of its claims against Colonial. It is therefore

**ORDERED** that Defendant Colonial's Motion for Summary Judgment (Docket Entry No. 56) is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 7th day of January, 2008.

Calvin Botley
United States Magistrate Judge